IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

United States of America,

       Plaintiff,

      v.                                    Case No.

Jean Richard Salvador,

       Defendant.

## COMPLAINT

The United States of America ("United States"), by its attorney, Scott W. Murray, United States Attorney for the District of New Hampshire, alleges as follows:

## INTRODUCTION

1.    This is an action brought by the United States against defendant Jean Richard Salvador ("Defendant") to enforce a Forfeiture Order issued by the Federal Communications Commission ("FCC") on or about June 24, 2014, seeking a monetary forfeiture of fifteen thousand dollars ($15,000) pursuant to 47 U.S.C. § 503(b).

## JURISDICTION AND VENUE

2.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1345 and 1355 and 47 U.S.C. § 504(a).

## PARTIES

3.    Plaintiff is the United States of America.

4.    Defendant is a resident of 5 Dora Drive, Apt. C, Rochester, New Hampshire 03867, a location within this District.  At the time of the violations that are the subject of this Complaint, Defendant was a resident of 9198 NW 4th Avenue, Apt. 2, Miami, Florida.

5.      Venue is proper pursuant to 28 U.S.C. §§ 1355(b), 1391(b), and 1395(a), and 47 U.S.C. § 504(a), because Defendant resides within this District.

STATUTORY AND REGULATORY BACKGROUND

6.      The FCC is an independent federal regulatory agency created by Congress to, *inter alia*, regulate intrastate, interstate, and foreign radio communications pursuant to the Communications Act of 1934, as amended (the "Act"), 47 U.S.C. § 151 *et seq.*

7.      Section 301 of the Act, 47 U.S.C. § 301, prohibits the operation of any apparatus for the transmission of energy, communications, or signals by radio from one place in the United States to another place in the United States, except under and in accordance with the Act and with a license for that purpose granted under the provisions of the Act.

8.      Pursuant to 47 C.F.R. § 15.1 *et seq.*, an FM broadcast signal with field strength greater than 250 microvolts per meter ("μV/m") at a distance of three meters from the transmitting antenna must be licensed under 47 U.S.C. § 301.

9.      Pursuant to 47 U.S.C. § 503(b), any person whom the FCC determines to have willfully or repeatedly failed to comply with the provisions of Chapter 5, Title 47 of the United States Code (including 47 U.S.C. § 301) or of any rule, regulation, or order issued by the FCC shall be liable to the United States for a forfeiture penalty.

10.     Section 312(f)(1) of the Act, which applies to violations for which forfeitures are assessed under section 503(b), provides that "[t]he term 'willful,' when used with reference to the commission or omission of any act, means the conscious and deliberate commission or omission of such act, irrespective of any intent to violate any provision of this Act or any rule or regulation of the Commission authorized by this Act."  47 U.S.C. § 312(f)(1), Section 312(f)(2)

2

of the Act, which also applies to violations for which forfeitures are assessed under section 503(b), provides that "[t]he term 'repeated,' when used with reference to the commission or omission of any act, means the commission or omission of such act more than once, or, if such commission or omission is continuous, for more than one day." 47 U.S.C. § 312(f)(2).

<u>THE DEFENDANT</u>

11.     At all times relevant to this Complaint, Defendant operated an unlicensed radio station at 89.5 MHz from a station located in Miami, Florida.

<u>DEFENDANT'S WRONGFUL CONDUCT</u>

12.     On June 28, July 5 and September 17, 2013, in response to complaints, agents from the FCC Enforcement Bureau's Miami Office monitored the frequency 89.5 MHz in Miami, Florida.

13.     On each of those days, the agents observed a radio signal on 89.5 MHz and used direction-finding techniques to locate the source of the transmissions to a multi-family residence at 9198 NW 4th Avenue in Miami, Florida. The agents also took field strength measurements on each of the three days and determined that the signal being broadcast exceeded the limits for operation under Part 15 of the FCC's rules ("Rules") and therefore required a license. Section 15.239 of the Rules provides that non-licensed broadcasting in the 88-108 MHz band is permitted only if the field strength of the transmission does not exceed 250 micro volts per meter ("µV/m") at three meters. 47 C.F.R. § 15.239.

14.     A review of the FCC's records revealed that there was no FCC authorization to operate a radio station on 89.5 MHz at this location in Miami, Florida.

15.     After completing the field strength measurements on July 5, 2013, the agents

entered Apartment 2 at the multi-family residence after receiving permission from the occupant

of the apartment, who identified himself as Richard Salvador.  Mr. Salvador claimed that a friend

operated the radio station at the location and, after purportedly receiving permission from his

friend, Mr. Salvador permitted the agents to inspect the unlicensed station. Following the agents'

inspection, Mr. Salvador relinquished the radio transmitter to the agents, again after purportedly

receiving permission from his friend,

16.     Prior to leaving the apartment, the agents issued an on-scene Notice of Unlicensed

Operation to Mr. Salvador, which he signed and which warned that operation of an unlicensed

station violated the Communications Act and FCC rules and could result in further enforcement

action. *See* Exhibit A  attached hereto and incorporated by reference.  The agents later

determined that Richard Salvador's legal name is Jean Richard Salvador.

17.     On September 17, 2013, in response to another complaint, agents from the FCC's

Miami Office again used direction finding techniques to locate the source of radio frequency

transmissions on the frequency 89.5 MHz to a transmitting antenna at the same address in

Miami, Florida. The agents took field strength measurements and determined that the signal

being broadcast exceeded the limits for operation under Part 15 of the FCC's rules ("Rules") and

therefore required a license. The agents again consulted the FCC's records and re-confirmed that

no authorization had been issued to Mr. Salvador, or to anyone else, for the operation of an FM

broadcast station at or near the multi-family residence in Miami, Florida.

<u>NOTICE OF APPARENT LIABILITY</u>

18.     On or about March 26, 2014, the FCC Enforcement Bureau's Miami Office issued

a Notice of Apparent Liability for Forfeiture ("NAL") to Defendant for operation of an

unlicensed radio station on 89.5 MHz, *See* Exhibit B attached hereto and incorporated by

reference.  The NAL found that Defendant apparently willfully and repeatedly violated section

301 of the Communications Act of 1934, as amended, 47 U.S.C. § 301, by operating an

unlicensed radio transmitter on the frequency 89.5 MHz in Miami, Florida without the required

FCC authorization.

19.     In view of the record evidence, the NAL proposed a forfeiture of $15,000 against

Defendant for violation of section 301 of the Act.

20.     Defendant submitted oral responses to the NAL by telephone, asserting to an FCC

agent that "'I don't have a station, I'm not there anymore'" and "that he was not present at the

station in September 2013 and that his girlfriend must have let 'a guy' (the purported operator)

into Apartment 2." *See* Exhibit C at ¶4 attached hereto and incorporated by reference

<u>THE FORFEITURE ORDER</u>

21.     On or about June 24, 2014, based on the NAL, the FCC entered a Forfeiture Order

in the amount of fifteen thousand dollars ($15,000.00) against Defendant for his willful and

repeated violation of Section 301 of the Act, 47 U.S.C. § 301, by operating an unlicensed radio

station. Exhibit C.

22.     The FCC found that it was undisputed that on June 28, July 5, and September 17,

2013, an unlicensed FM station operated on 89.5 MHz from Apartment 2 in a multi-family

residence in Miami, Florida. Although in his oral response to the NAL Defendant had denied

5

presently having a station or being currently located at Apartment 2, he did not deny operating

the unlicensed station in June or July 2013 or being a DJ or organizer for the unlicensed station.[1]

The FCC also did not find credible his statement that he did not operate the unlicensed station in

September, given the preponderance of the evidence, namely, that Defendant was present in the

apartment with the station when the agents arrived, Defendant admitted to agents that he

(Defendant) turned the station on and off, and Defendant failed to identify the purported "friend"

who operated the station. Therefore, the FCC concluded that Defendant willfully and repeatedly

violated Section 301 of the Act by operating an unlicensed FM radio station.

23.    The FCC sent a copy of the Forfeiture Order to Defendant by First Class and

Certified Mail Return Receipt. The letter sent by First Class was not returned, indicating that

Defendant received the Forfeiture Order.

<u>DEMAND FOR PAYMENT</u>

24.    The Forfeiture Order provided that if Defendant did not pay the fifteen thousand

dollars ($15,000.00) forfeiture within thirty (30) days, the case could be referred to the

Department of Justice for enforcement.

25.    On or about December 29, 2014, the FCC sent Defendant a letter demanding full

payment of the forfeiture within thirty days.  The letter warned that if payment was not made

within the time specified, the matter would be referred to the Department of Justice for

enforcement.  That letter was sent via First Class Mail and was not returned.  *See* Exhibit D

attached hereto and incorporated by reference

---

[1] The FCC considered Defendant's oral responses even though FCC Rules require a written
response to an NAL. 47 C.F.R. § 1.80(f)(3).

26.     Despite due demand, Defendant has not paid the Forfeiture.

27.     A Certificate of Forfeiture is attached hereto as Exhibit E attached hereto and incorporated by reference.

<u>CLAIM FOR RELIEF</u>

28.     The United States repeats and realleges each and every allegation set forth in paragraphs 1 through 27 above.

29.     Defendant has repeatedly and willfully violated Section 301 of the Act, 47 U.S.C. § 301, and rules and regulations promulgated thereunder, by unlawfully operating an unlicensed radio station.

30.     By reason of the foregoing, Defendant is liable to the United States for a forfeiture penalty pursuant to 47 U.S.C. § 503(b), section 1.80 of the FCC's Rules, 47 C.F.R. § 1.80, and the FCC's *Forfeiture Policy Statement and Amendment of Section 1.80 of the Rules to Incorporate the Forfeiture Guidelines,* 12 FCC Rcd 17087 (1997), *recon. denied*, 15 FCC Rcd 303 (1999).

WHEREFORE, the plaintiff, United States of America, requests this Court to enter judgment for the Plaintiff and against Defendant as follows:

a.     In the amount of $15,000.00;

b.     Interest from the date of judgment at the legal rate in effect on the date of judgment, pursuant to 28 U.S.C. § 1961;

c.     Costs and disbursements incurred by the United States in this action; and

d.     Such other further relief that the Court may deem proper.

7

Respectfully submitted,

SCOTT W. MURRAY
United States Attorney


By: /s/ Michael T. McCormack
Michael T. McCormack
Assistant U.S. Attorney
NH Bar No. 16470
53 Pleasant Street, 4th Floor
Concord, NH 03301
603-225-1552
Michael.mccormack2@usdoj.gov

Dated: June 26, 2018



**FEDERAL COMMUNICATIONS COMMISSION**
ENFORCEMENT BUREAU
**South Central Region**
**Miami Office**
P.O. Box 520617
Miami, Florida 33152-0617

**HAND DELIVERED**

At: Richard Salvadore
9798 NW 4th Ave. APT#2
Miami FL 33150

Date: 7/5/13

**RE: NOTICE OF UNLICENSED RADIO OPERATION**

To: Richard Salvadore

On 6/28/2013, agents of the Federal Communications Commission ("FCC") noted the following conditions regarding the radio station located at 9798 NW 4th Ave., Miami, FL 33150 APT2:

[ ] Your refusal to allow an inspection of your radio equipment in violation of Section 303(n) of the Communications Act of 1934, as amended. (*See* 47 U.S.C. § 303(n)).

[✓] A valid FCC radio station license for your radio transmissions on 89.5 MHz was not in evidence at the time of attempted inspection. Operation of a radio station without proper Commission authorization is a violation of Section 301 of the Communications Act of 1934, as amended. (*See* 47 U.S.C. § 301)

[✓] Radio stations must be licensed by the FCC pursuant to 47 U.S.C. § 301. The only exceptions to this licensing requirement are for certain transmitters using or operating at a power level or mode of operation that complies with the standards established in Part 15 of the Commission's rules, 47 C.F.R. §§ 15.1 *et seq.* Field strength measurements of your operation on 89.5 MHz were taken and were found to exceed the allowable limits established in Part 15. Thus, your station is operating in violation of 47 U.S.C. § 301.

[ ] Spurious radio signals associated with the operation of this station were detected on the frequency(ies) of _____
_____. The spurious signal(s) is(are) within the radio frequency band assigned for communications between aircraft and/or aircraft and aviation ground facilities. **The signal(s) may present a safety hazard to the operation of aircraft since air/ground communications could be affected.**

[✓] Spurious radio signals associated with the operation of this station were detected on the frequency(ies) of 179 MHz, 268.5MHz, and 358 MHz. The(se) spurious signal(s) is(are) within the frequency band assigned for Other Radio Services, and could interfere with licensed or other authorized radio communications.

You are hereby warned that operation of radio transmitting equipment without a valid radio station authorization and/or refusal to allow inspection of your radio station constitutes violation of the Federal laws cited above and could subject the operator to the severe penalties provided, including, but not limited to, substantial monetary fines, *in rem* arrest action against the offending radio equipment, and criminal sanctions including imprisonment. (*see* 47 U.S.C. §§ 401, 501, 503 & 510).

**UNLICENSED OPERATION OF THIS RADIO STATION MUST BE DISCONTINUED IMMEDIATELY.**

You have ten (10) days from the date of this notice to respond to this letter with any evidence that you have authority to operate granted by the FCC. Your response should be sent to the address listed in the letterhead. Under the Privacy Act of 1974, 5 U.S.C. § 552a(e)(3), we are informing you that the Commission's staff will use all relevant material information before it to determine what, if any, enforcement action is required to ensure your compliance with FCC Rules. This will include any information that you may disclose in your reply.

When delivered in person, this notice must be acknowledged.

Signing for this document is not an admission of guilt.

Received by _____  Date 7/5/13

Issuing Agent
Federal Communications Commission
Miami Office

**See Reverse for More Information**

### Section 301. License for Radio Communication or Transmission of Energy

It is the purpose of this Act, among other things, to maintain the control of the United States over all the channels of radio transmission; and to provide for the use of such channels, but not the ownership thereof, by persons for limited periods of time, under licenses granted by Federal authority, and no such license shall be construed to create any right, beyond the terms, conditions, and periods of the license. No person shall use or operate any apparatus for the transmission of energy or communications or signals by radio (a) from one place in any State, Territory, or possession of the United States or in the District of Columbia to another place in the same State, Territory, possession, or District; or (b) from any State, Territory, or possession of the United States, or from the District of Columbia to any other State, Territory, or possession of the United States; or (c) from any place in any State, Territory, or possession of the United States, or in the District of Columbia, to any place in any foreign country or to any vessel; or (d) within any State when the effects of such use extend beyond the borders of said State, or when interference is caused by such use or operation with the transmission of such energy, communications, or signals from within said State to any place beyond its borders, or from any place beyond its borders to any place within said State, or with the transmission or reception of such energy, communications, or signals from and/or to places beyond the borders of said State; or (e) upon any vessel or aircraft of the United States (except as provided in section 303(t); or (f) upon any other mobile stations within the jurisdiction of the United States, except under and in accordance with this Act and with a license in that behalf granted under the provisions of this Act.

### Section 303. General Powers of The Commission

Except as otherwise provided in this Act, the Commission from time to time, as public convenience, interest, or necessity requires shall-

(n) Have authority to inspect all radio installations associated with stations required to be licensed by any Act, or which the Commission by rule has authorized to operate without a license under Section 307(e)(1), or which are subject to the provisions of any Act, treaty, or convention binding on the United States, to ascertain whether in construction, installation, and operation they conform to the requirements of the rules and regulations of the Commission, the provision of any Act, the terms of any treaty or convention binding on the United States and the conditions of the license or other instrument of authorization under which they are constructed, installed, or operated.

### Section 333. Willful or Malicious Interference

No person shall willfully or maliciously interfere with or cause interference to any radio communications of any station licensed or authorized by or under this Act or operated by the United States Government.

### Section 501. General Penalty

Any person who willfully and knowingly does or causes or suffers to be done any act, matter, or thing, in this Act prohibited or declared to be unlawful, or who willfully or knowingly omits or fails to do any act, matter, or thing in this Act required to be done, or willfully and knowingly causes or suffers such omission or failure, shall, upon conviction thereof, be punished for such offense, for which no penalty (other than a forfeiture) is provided in this Act, by a fine of not more than $10,000 or by imprisonment for a term not exceeding one year, or both; except that any person, having been once convicted of an offense punishable under this section, who is subsequently convicted of violating any provision of this Act punishable under this section, shall be punished by a fine of not more than $10,000 or by imprisonment for a term not exceeding two years, or both.

### Section 503. Forfeitures in Cases of Rebates and Offsets

...

(b)(1) Any person who is determined by the Commission ... to have--

...

(B) willfully or repeatedly failed to comply with any of the provisions of this Act or of any rule, regulation, or order issued by the Commission under this Act or under any treaty, convention, or other agreement to which the United States is a party and which is binding on the United States;

...

shall be liable to the United States for a forfeiture penalty.

...

### Section 510. Forfeiture of Communications Devices

(a) Any electronic, electromagnetic, radio frequency, or similar device, or component thereof, used, sent, carried, manufactured, assembled, possessed, offered for sale, sold or advertised with willful and knowing intent to violate Section 301 or 302, or rules prescribed by the Commission under such sections, may be seized and forfeited to the United States.

Federal Communications Commission                          DA 14-386

Before the
Federal Communications Commission
Washington, D.C. 20554

In the Matter of                                    )
                                                    )
Jean Richard Salvador                               )        File No.: EB-FIELDSCR-13-00009676
                                                    )        NAL/Acct. No.: 201432600002
Miami, Florida                                      )        FRN: 0023464704

NOTICE OF APPARENT LIABILITY FOR FORFEITURE

**Adopted: March 26, 2014**                                 **Released: March 26, 2014**

By the Resident Agent, Miami Office, South Central Region, Enforcement Bureau:

## I.    INTRODUCTION

1.       In this Notice of Apparent Liability for Forfeiture (NAL), we find that Jean Richard
Salvador apparently willfully and repeatedly violated Section 301 of the Communications Act of 1934, as
amended (Act),[1] by operating an unlicensed radio transmitter on the frequency 89.5 MHz in Miami, Florida.
We conclude that Mr. Salvador is apparently liable for a forfeiture in the amount of fifteen thousand dollars
($15,000).

## II.   BACKGROUND

2.       On June 28, 2013, in response to a complaint, agents from the Enforcement Bureau's
Miami Office (Miami Office) used direction-finding techniques to locate the source of radio frequency
transmissions on the frequency 89.5 MHz to a transmitting antenna mounted in a tree on the property of a
multi-family residence in Miami, Florida. The agents took field strength measurements of the station's
signal and determined that the transmissions on 89.5 MHz exceeded the limits for operation under Part 15 of
the Commission's rules (Rules),[2] and therefore required a license. The agents consulted the Commission's
records and confirmed that no authorization had been issued to Mr. Salvador, or to anyone else, for the
operation of an FM broadcast station at or near the multi-family residence in Miami, Florida.

3.       On July 5, 2013, agents from the Miami Office again used direction-finding techniques to
locate the source of transmissions on the frequency 89.5 MHz to the transmitting antenna identified on June
28, 2013. The agents then traced the coaxial cable from the transmitting antenna into the rear facing
window of Apartment 2 of the multi-family residence. Agents knocked on the door of Apartment 2 at
approximately 11:30 am. Approximately 3 minutes later, the agents observed that the radio station on 89.5
MHz ceased operation. A male then answered the door and identified himself as "Richard Salvador," but
would not provide any identification. In response to agents' questions regarding the transmissions on 89.5
MHz, Mr. Salvador stated that his friend operated the radio station. After purportedly receiving permission
from his friend, Mr. Salvador eventually allowed the agents to inspect the unlicensed station. The agents

---

[1] 47 U.S.C. § 301.

[2] Part 15 of the Rules sets out the conditions and technical requirements under which certain radio transmission
devices may be used without a license. In relevant part, Section 15.239 of the Rules provides that non-licensed
broadcasting in the 88-108 MHz band is permitted only if the field strength of the transmission does not exceed 250
μV/m at three meters. 47 C.F.R. § 15.239.

observed that the coaxial cable that entered the rear window of Apartment 2 was connected to an unmarked, homemade FM transmitter and other equipment. Mr. Salvador told the agents that he turned the radio transmitter on and off at different times on multiple days on behalf of his friend, but did not provide any additional information regarding his friend or his operation of the station. Mr. Salvador then voluntarily relinquished the transmitter to the agents, allegedly after receiving permission from his friend. The agents did not witness any other persons present at Apartment 2 besides Mr. Salvador.

4.      Prior to leaving Apartment 2, the agents issued an on-scene Notice of Unlicensed Operation (NOUO) to Mr. Salvador, which he signed, and which warned that operation of an unlicensed station violated the Act and the Rules and could result in further enforcement action.[3] Agents later determined that "Richard Salvador's" legal name is "Jean Richard Salvador."[4] In addition, evidence obtained from the Internet identifies Mr. Salvador as a DJ known as Konpaman for BREEZ FM 89.5 in Miami, Florida. According to the domain registrar, "Richard Salvador" registered the domain name for BREEZ FM's webpage.

5.      On September 17, 2013, in response to another complaint, agents from the Miami Office again used direction-finding techniques to locate the source of radio frequency transmissions on the frequency 89.5 MHz to a transmitting antenna at the same multi-family residence in Miami, Florida. The agents took field strength measurements of the station's signal and determined that the transmissions on 89.5 MHz once again exceeded the limits for operation under Part 15 of the Rules and required a license. The agents consulted the Commission's records and re-confirmed that no authorization had been issued to Mr. Salvador, or to anyone else, for the operation of an FM broadcast station at or near the multi-family residential residence in Miami, Florida.

## III.   DISCUSSION

6.      Section 503(b) of the Act provides that any person who willfully or repeatedly fails to comply substantially with the terms and conditions of any license, or willfully or repeatedly fails to comply with any of the provisions of the Act or of any rule, regulation, or order issued by the Commission thereunder, shall be liable for a forfeiture penalty.[5] Section 312(f)(1) of the Act defines "willful" as the "conscious and deliberate commission or omission of [any] act, irrespective of any intent to violate" the law.[6] The legislative history to Section 312(f)(1) of the Act clarifies that this definition of willful applies to both Sections 312 and 503(b) of the Act,[7] and the Commission has so interpreted the term in the Section 503(b)

[3] *Richard Salvadore*, On Scene Notice of Unlicensed Operation (July 5, 2013) (on file in EB-FIELDSCR-13-00009676). The agent mistakenly added an "e" to Mr. Salvador's name when filling out the NOUO.

[4] On July 5, 2013, "Richard Salvador" identified the vehicle parked in front of Apartment 2 as his. Using the vehicle identification number, an agent consulted Lexis Nexis and determined the vehicle was registered to "Jean Richard Salvador" at Apartment 2 of the multi-family dwelling. Lexis Nexis lists "Richard Salvador" and "Richard Salvadore" as two of many name variations associated with "Jean Richard Salvador." Lexis Nexis Investigative Portal Homepage, http://www.lexisnexis.com/government/solutions/investigative/ (last visited Nov. 14, 2013).

[5] 47 U.S.C. § 503(b).

[6] 47 U.S.C. § 312(f)(1).

[7] H.R. Rep. No. 97-765, 97th Cong. 2d Sess. 51 (1982) ("This provision [inserted in Section 312] defines the terms 'willful' and 'repeated' for purposes of section 312, and for any other relevant section of the act (e.g., Section 503) . . . . As defined[,] . . . 'willful' means that the licensee knew that he was doing the act in question, regardless of whether there was an intent to violate the law. 'Repeated' means more than once, or where the act is continuous, for more than one day. Whether an act is considered to be 'continuous' would depend upon the circumstances in each case. The definitions are intended primarily to clarify the language in Sections 312 and 503, and are consistent with the Commission's application of those terms . . . .").

context.[8] The Commission may also assess a forfeiture for violations that are merely repeated, and not willful.[9] The term "repeated" means the commission or omission of such act more than once or for more than one day.[10]

## A. Unlicensed Broadcast Operations

7. We find that the record evidence in this case is sufficient to establish that Mr. Salvador violated Section 301 of the Act. Section 301 of the Act states that no person shall use or operate any apparatus for the transmission of energy or communications or signals by radio within the United States, except under and in accordance with the Act and with a license granted under the provisions of the Act.[11] On June 28, July 5, and September 17, 2013, agents from the Miami Office determined that an unlicensed radio station on the frequency 89.5 MHz was operating from Mr. Salvador's residence. A review of the Commission's records revealed that no license or authorization was issued to Mr. Salvador, or to anyone else, to operate a radio station on 89.5 MHz at this location. Although Mr. Salvador alleged that his friend operated the unlicensed station, publicly available information identifies Mr. Salvador as an organizer and DJ for the unlicensed station marketing itself as BREEZ FM 89.5 in Miami, Florida. The totality of the evidence convinces us that Mr. Salvador is the friend referenced during the July 5, 2013 inspection. However, even if Mr. Salvador is not the friend, he exercised control over the unlicensed station by turning off the transmitter on July 5, 2013 and operating the transmitter on other days. Thus, Mr. Salvador was also an operator of the unlicensed station and equally liable for a forfeiture under Section 301 of the Act.[12] Based on the evidence before us, we find Mr. Salvador apparently willfully and repeatedly violated Section 301 of the Act by operating radio transmission equipment on the frequency 89.5 MHz without the required Commission authorization.

---

[8] See, e.g., Southern California Broadcasting Co., Memorandum Opinion and Order, 6 FCC Rcd 4387, 4388, para. 5 (1991), recons. denied, 7 FCC Rcd 3454 (1992).

[9] See, e.g., Callais Cablevision, Inc., Notice of Apparent Liability for Monetary Forfeiture, 16 FCC Rcd 1359, 1362, para. 10 (2001) (Callais Cablevision, Inc.) (proposing a forfeiture for, inter alia, a cable television operator's repeated signal leakage).

[10] Section 312(f)(2) of the Act, 47 U.S.C. § 312(f)(2), which also applies to violations for which forfeitures are assessed under Section 503(b) of the Act, provides that "[t]he term 'repeated', when used with reference to the commission or omission of any act, means the commission or omission of such act more than once or, if such commission or omission is continuous, for more than one day." See Callais Cablevision, Inc., 16 FCC Rcd at 1362, para. 9.

[11] 47 U.S.C. § 301.

[12] See, e.g., Glen Rubash, Forfeiture Order, 28 FCC Rcd 15922, 15924, para. 5 (Enf. Bur. 2013) ("[L]iability for unlicensed operation may be assigned to any individual taking part in the operation of the unlicensed station, regardless of who else may be responsible for the operation."); Durrant Clarke, Notice of Apparent Liability for Forfeiture, 26 FCC Rcd 6982, 6984, para. 7 (Enf. Bur. 2011) (finding the fact that someone else may have been involved in the operation of unlicensed station does not lessen culpability); Vicot Chery, Notice of Apparent Liability for Forfeiture, 25 FCC Rcd 14596, 14598, paras. 6–7 (Enf. Bur. 2010) (finding that someone who leased space housing unlicensed transmitter and turned the transmitter off exercised control over and operated that station); Jean L. Senatus, Forfeiture Order, 20 FCC Rcd 14418, 14420, para. 11 (Enf. Bur. 2005) ("The Act does not provide that a forfeiture can be assessed only where we are able to identify all individuals involved in the operation of an unlicensed station.").

### B.    Proposed Forfeiture

8.      Pursuant to the Commission's *Forfeiture Policy Statement* and Section 1.80 of the Rules, the base forfeiture amount for operation without an instrument of authorization is $10,000.[13] In assessing the monetary forfeiture amount, we must also take into account the statutory factors set forth in Section 503(b)(2)(E) of the Act, which include the nature, circumstances, extent, and gravity of the violations, and with respect to the violator, the degree of culpability, any history of prior offenses, ability to pay, and other such matters as justice may require.[14] We find that the violations here warrant a proposed forfeiture above the base amount. On July 5, 2013, Mr. Salvador was issued an on-scene NOUO explaining that unlicensed operation of a radio station violated the Act and could subject him to further enforcement action, including a substantial monetary forfeiture. Despite having acknowledged receipt of the NOUO, Mr. Salvador continued to operate an unlicensed radio station on 89.5 MHz from his residence in Miami, Florida. The fact that Mr. Salvador continued to operate an unlicensed station after being put on notice that his actions contravened the Act, the Rules, and related Commission orders demonstrates a deliberate disregard for the Commission's authority and requirements. Thus, we find that an upward adjustment in the forfeiture amount of $5,000 is warranted.[15] Applying the *Forfeiture Policy Statement*, Section 1.80 of the Rules, and the statutory factors to the instant case, we conclude that Mr. Salvador is apparently liable for a forfeiture in the amount of fifteen thousand dollars ($15,000) for operating an unlicensed radio station.

## IV.    ORDERING CLAUSES

9.      Accordingly, **IT IS ORDERED** that, pursuant to Section 503(b) of the Act, and Sections 0.111, 0.204, 0.311, 0.314, and 1.80 of the Rules, Jean Richard Salvador is hereby **NOTIFIED** of this **APPARENT LIABILITY FOR A FORFEITURE** in the amount of fifteen thousand dollars ($15,000) for violations of Section 301 of the Act.[16]

10.      **IT IS FURTHER ORDERED** that, pursuant to Section 1.80 of the Rules, within thirty (30) calendar days of the release date of this Notice of Apparent Liability for Forfeiture, Jean Richard Salvador **SHALL PAY** the full amount of the proposed forfeiture or **SHALL FILE** a written statement seeking reduction or cancellation of the proposed forfeiture.

11.      Payment of the forfeiture must be made by check or similar instrument, wire transfer, or credit card, and must include the NAL/Account Number and FRN referenced above. Mr. Salvador shall also send electronic notification on the date said payment is made to SCR-Response@fcc.gov. Regardless of the form of payment, a completed FCC Form 159 (Remittance Advice) must be

---

[13] *The Commission's Forfeiture Policy Statement and Amendment of Section 1.80 of the Rules to Incorporate the Forfeiture Guidelines*, Report and Order, 12 FCC Rcd 17087 (1997) (*Forfeiture Policy Statement*), *recons. denied*, 15 FCC Rcd 303 (1999); 47 C.F.R. § 1.80.

[14] 47 U.S.C. § 503(b)(2)(E).

[15] *See Robert Brown*, Memorandum Opinion and Order, 27 FCC Rcd 6975 (Enf. Bur. 2012), *aff'g*, Forfeiture Order, 26 FCC Rcd 6854 (Enf. Bur. 2011), *aff'g*, Notice of Apparent Liability for Forfeiture, 25 FCC Rcd 13740 (Enf. Bur. 2010) (upwardly adjusted proposed forfeiture by $5,000 because violator operated an unlicensed radio station after receiving a written warning that such action violated the Act and Rules); *Loyd Morris*, Memorandum Opinion and Order, 27 FCC Rcd 6979 (Enf. Bur. 2012), *aff'g*, Forfeiture Order, 26 FCC Rcd 6856 (Enf. Bur. 2011), *aff'g*, Notice of Apparent Liability for Forfeiture, 25 FCC Rcd 13736 (Enf. Bur. 2010) (upwardly adjusted proposed forfeiture by $5,000 because violator operated an unlicensed radio station after receiving a written warning that such action violated the Act and Rules).

[16] 47 U.S.C. § 301, 503(b); 47 C.F.R. §§ 0.111, 0.204, 0.311, 0.314, 1.80.

submitted.[17]  When completing the FCC Form 159, enter the Account Number in block number 23A (call sign/other ID) and enter the letters "FORF" in block number 24A (payment type code).  Below are additional instructions you should follow based on the form of payment you select:

- Payment by check or money order must be made payable to the order of the Federal Communications Commission.  Such payments (along with the completed Form 159) must be mailed to Federal Communications Commission, P.O. Box 979088, St. Louis, MO 63197-9000, or sent via overnight mail to U.S. Bank – Government Lockbox #979088, SL-MO-C2-GL, 1005 Convention Plaza, St. Louis, MO 63101.

- Payment by wire transfer must be made to ABA Number 021030004, receiving bank TREAS/NYC, and Account Number 27000001.  To complete the wire transfer and ensure appropriate crediting of the wired funds, a completed Form 159 must be faxed to U.S. Bank at (314) 418-4232 on the same business day the wire transfer is initiated.

- Payment by credit card must be made by providing the required credit card information on FCC Form 159 and signing and dating the Form 159 to authorize the credit card payment.  The completed Form 159 must then be mailed to Federal Communications Commission, P.O. Box 979088, St. Louis, MO 63197-9000, or sent via overnight mail to U.S. Bank – Government Lockbox #979088, SL-MO-C2-GL, 1005 Convention Plaza, St. Louis, MO 63101.

12.  Any request for making full payment over time under an installment plan should be sent to:  Chief Financial Officer—Financial Operations, Federal Communications Commission, 445 12th Street, S.W., Room 1-A625, Washington, D.C. 20554.[18]  If you have questions regarding payment procedures, please contact the Financial Operations Group Help Desk by phone, 1-877-480-3201, or by e-mail, ARINQUIRIES@fcc.gov.

13.  The written statement seeking reduction or cancellation of the proposed forfeiture, if any, must include a detailed factual statement supported by appropriate documentation and affidavits pursuant to Sections 1.16 and 1.80(f)(3) of the Rules.[19]  Mail the written statement to Federal Communications Commission, Enforcement Bureau, South Central Region, Miami Office, P.O. Box 520617, Miami, FL 33152-0617, and include the NAL/Acct. No. referenced in the caption.  Jean Richard Salvador also shall e-mail the written response to SCR-Response@fcc.gov.

14.  The Commission will not consider reducing or canceling a forfeiture in response to a claim of inability to pay unless the petitioner submits:  (1) federal tax returns for the most recent three-year period; (2) financial statements prepared according to generally accepted accounting principles (GAAP); or (3) some other reliable and objective documentation that accurately reflects the petitioner's current financial status.  Any claim of inability to pay must specifically identify the basis for the claim by reference to the financial documentation submitted.

---

[17] An FCC Form 159 and detailed instructions for completing the form may be obtained at http://www.fcc.gov/Forms/Form159/159.pdf.

[18] *See* 47 C.F.R. § 1.1914.

[19] 47 C.F.R. §§ 1.16, 1.80(f)(3).

15.    **IT IS FURTHER ORDERED** that a copy of this Notice of Apparent Liability for Forfeiture shall be sent by both Certified Mail, Return Receipt Requested, and First Class Mail to Jean Richard Salvador at his address of record.

FEDERAL COMMUNICATIONS COMMISSION

*Stephani Dabkowski*

Stephanie Dabkowski
Resident Agent
Miami Office
South Central Region
Enforcement Bureau

| Federal Communications Commission | DA 14-861 |
|---|---|

**Before the**
**Federal Communications Commission**
**Washington, D.C. 20554**

| | | |
|---|---|---|
| In the Matter of | ) | |
| | ) | |
| Jean Richard Salvador | ) | File No.: EB-FIELDSCR-13-00009676 |
| | ) | NAL/Acct. No.: 201432600002 |
| Miami, Florida | ) | FRN: 0023464704 |

**FORFEITURE ORDER**

**Adopted: June 24, 2014**                          **Released:  June 24, 2014**

By the Regional Director, South Central Region, Enforcement Bureau:

## I.   INTRODUCTION

1.      We impose a penalty of $15,000 against Jean Richard Salvador for operating an unlicensed FM radio station on the frequency 89.5 MHz in Miami, Florida.  Although Mr. Salvador denies operating the unlicensed station in September 2013, he did not dispute that he operated the station in June or July of 2013.

2.      Specifically, in this Forfeiture Order (Order), we issue a monetary forfeiture in the amount of fifteen thousand dollars ($15,000) to Mr. Salvador for willfully and repeatedly violating Section 301 of the Communications Act of 1934, as amended (Act).[1]  The noted violations involved Mr. Salvador's operation of an unlicensed broadcast radio station.

## II.   BACKGROUND

3.      On March 26, 2014, the Enforcement Bureau's Miami Office (Miami Office) issued a Notice of Apparent Liability for Forfeiture (*NAL*) to Mr. Salvador for operation of an unlicensed FM radio station.[2]  As reflected in the *NAL*, on June 28, July 5, and September 17, 2013, agents from the Miami Office, using direction finding techniques, determined that an unlicensed radio station was operating on 89.5 MHz from Apartment 2 in a multi-family residence in Miami.  Mr. Salvador was present in Apartment 2 when the agents attempted to inspect the unlicensed station on July 5, 2013.  At that time, Mr. Salvador admitted to the agents that he turned the unlicensed station transmitter on and off at different times on multiple days, but claimed his unnamed "friend" operated the station.  Agents later found evidence on the Internet identifying Mr. Salvador as an organizer and DJ for the unlicensed station marketing itself as BREEZ FM 89.5 in Miami.  The totality of the evidence led the Enforcement Bureau to conclude that Mr. Salvador was the friend referenced during the July 5, 2013 inspection.  However, even if Mr. Salvador was not the friend, the Enforcement Bureau concluded that he exercised control over the unlicensed station by turning off the transmitter on July 5, 2013, and operating the transmitter on other days.

4.      In response to the *NAL*, Mr. Salvador telephoned the Miami Office on April 1, 2014, and told an agent that "I don't have a station.  I'm not there anymore."[3]  An agent tried contacting Mr. Salvador

---

[1] 47 U.S.C. § 301.

[2] *Jean Richard Salvador*, Notice of Apparent Liability for Forfeiture, 29 FCC Rcd 2976 (Enf. Bur. 2014) (*NAL*).  A comprehensive recitation of the facts and history of this case can be found in the *NAL* and is incorporated herein by reference.

[3] A written response was required by the *NAL*, so the Enforcement Bureau could have issued a Forfeiture Order without referencing Mr. Salvador's phone calls.

on April 4, 2014, but was sent to voicemail, which referenced "FM" in the recorded greeting. On April 7, 2014, Mr. Salvador again called the Miami Office and told an agent that he was not present at the station in September 2013 and that his girlfriend must have let a "guy" (the purported operator) into Apartment 2.

## III. DISCUSSION

5.     The proposed forfeiture amount in this case was assessed in accordance with Section 503(b) of the Act,[4] Section 1.80 of the Commission's rules (Rules),[5] and the *Forfeiture Policy Statement*.[6] In examining Mr. Salvador's responses, Section 503(b)(2)(E) of the Act requires that the Commission take into account the nature, circumstances, extent, and gravity of the violation and, with respect to the violator, the degree of culpability, any history of prior offenses, ability to pay, and other such matters as justice may require.[7] As discussed below, we have fully considered Mr. Salvador's responses in light of these statutory factors and find that a $15,000 forfeiture is appropriate.

6.     We affirm the *NAL's* finding that Mr. Salvador willfully and repeatedly violated Section 301 of the Act.[8] Section 301 of the Act states that no person shall use or operate any apparatus for the transmission of energy or communications or signals by radio within the United States, except under and in accordance with the Act and with a license granted under the provisions of the Act.[9] It is undisputed that on June 28, July 5, and September 17, 2013, an unlicensed FM station operated on 89.5 MHz from Apartment 2 in a multi-family residence in Miami. Although Mr. Salvador denies *presently* having a station or being *currently* located at Apartment 2, he does not deny operating the unlicensed station in June or July 2013 or being a DJ or organizer for the unlicensed station. We also do not find credible his statement that he did not operate the unlicensed station in September, given the preponderance of the evidence, namely, that Mr. Salvador was present in the apartment with the station when the agents arrived, Mr. Salvador admitted to agents that he (Salvador) turned the station on and off, Mr. Salvador failed to identify a purported "friend" who operated the station, and the web pages evidencing Mr. Salvador's connection to the station. Therefore, based on the evidence before us, we conclude that Mr. Salvador willfully and repeatedly violated Section 301 of the Act by operating an unlicensed FM radio station.

## IV. ORDERING CLAUSES

7.     Accordingly, **IT IS ORDERED** that, pursuant to Section 503(b) of the Act, and Sections 0.111, 0.204, 0.311, 0.314, and 1.80(f)(4) of the Rules, Jean Richard Salvador **IS LIABLE FOR A MONETARY FORFEITURE** in the amount of fifteen thousand dollars ($15,000) for violations of Section 301 of the Act.[10]

8.     Payment of the forfeiture shall be made in the manner provided for in Section 1.80 of the Rules within thirty (30) calendar days after the release date of this Order.[11] If the forfeiture is not paid within the period specified, the case may be referred to the U.S. Department of Justice for enforcement of

---

[4] 47 U.S.C. § 503(b).

[5] 47 C.F.R. § 1.80.

[6] *The Commission's Forfeiture Policy Statement and Amendment of Section 1.80 of the Rules to Incorporate the Forfeiture Guidelines*, Report and Order, 12 FCC Rcd 17087 (1997), *recons. denied*, 15 FCC Rcd 303 (1999) (*Forfeiture Policy Statement*).

[7] 47 U.S.C. § 503(b)(2)(E).

[8] 47 U.S.C. § 301.

[9] *Id.*

[10] 47 U.S.C. §§ 301, 503(b); 47 C.F.R. §§ 0.111, 0.204, 0.311, 0.314, 1.80(f)(4).

[11] 47 C.F.R. § 1.80.

the forfeiture pursuant to Section 504(a) of the Act.[12]  Mr. Salvador shall send electronic notification of payment to SCR-Response@fcc.gov on the date said payment is made.

9.      The payment must be made by check or similar instrument, wire transfer, or credit card, and must include the NAL/Account Number and FRN referenced above.  Regardless of the form of payment, a completed FCC Form 159 (Remittance Advice) must be submitted.[13]  When completing the FCC Form 159, enter the Account Number in block number 23A (call sign/other ID) and enter the letters "FORF" in block number 24A (payment type code).  Below are additional instructions you should follow based on the form of payment you select:

- Payment by check or money order must be made payable to the order of the Federal Communications Commission.  Such payments (along with the completed Form 159) must be mailed to Federal Communications Commission, P.O. Box 979088, St. Louis, MO 63197-9000, or sent via overnight mail to U.S. Bank – Government Lockbox #979088, SL-MO-C2-GL, 1005 Convention Plaza, St. Louis, MO 63101.

- Payment by wire transfer must be made to ABA Number 021030004, receiving bank TREAS/NYC, and Account Number 27000001.  To complete the wire transfer and ensure appropriate crediting of the wired funds, a completed Form 159 must be faxed to U.S. Bank at (314) 418-4232 on the same business day the wire transfer is initiated.

- Payment by credit card must be made by providing the required credit card information on FCC Form 159 and signing and dating the Form 159 to authorize the credit card payment. The completed Form 159 must then be mailed to Federal Communications Commission, P.O. Box 979088, St. Louis, MO 63197-9000, or sent via overnight mail to U.S. Bank – Government Lockbox #979088, SL-MO-C2-GL, 1005 Convention Plaza, St. Louis, MO 63101.

10.     Any request for full payment over time under an installment plan should be sent to:  Chief Financial Officer—Financial Operations, Federal Communications Commission, 445 12th Street, S.W., Room 1-A625, Washington, D.C. 20554.[14]  If you have questions regarding payment procedures, please contact the Financial Operations Group Help Desk by phone, 1-877-480-3201, or by e-mail, ARINQUIRIES@fcc.gov.

11.     **IT IS FURTHER ORDERED** that a copy of this Order shall be sent by both First Class and Certified Mail, Return Receipt Requested, to Jean Richard Salvador at his address of record.

FEDERAL COMMUNICATIONS COMMISSION

Dennis P. Carlton
Regional Director, South Central Region
Enforcement Bureau

---

[12] 47 U.S.C. § 504(a).

[13] An FCC Form 159 and detailed instructions for completing the form may be obtained at http://www.fcc.gov/Forms/Form159/159.pdf.

[14] *See* 47 C.F.R. § 1.1914.

# FEDERAL COMMUNICATIONS COMMISSION
## OFFICE OF GENERAL COUNSEL



December 29, 2014

Jean Richard Salvador
9198 NW 4th Avenue
Apt. 2
Miami, FL 33150

          Re:    NAL No. 201432600002

Dear Mr. Salvador:

      On March 26, 2014, the Enforcement Bureau, Federal Communications Commission, issued a Notice of Apparent Liability For Forfeiture against you in the amount of $15,000.00 for the willful and repeated violation of Section 301 of the Communications Act, 47 U.S.C. § 301, by operating an unlicensed radio transmitter on the frequency 89.5 MHz in Miami, Florida. On June 24, 2014, the Enforcement Bureau issued a Forfeiture Order affirming the forfeiture amount. This is to inform you that if the forfeiture is not paid within 30 days of the date of this letter, the matter will be referred to the Department of Justice for enforcement.

      Payment may be made by check payable to the Federal Communications Commission. Please write on the check the NAL number noted above and mail your check along with a copy of this letter to:

          Federal Communications Commission
          Revenue & Receivables Operations Group
          P.O. Box 979088
          St. Louis, MO 63197

Thank you.

                        Sincerely,

                        Susan L. Launer
                        Deputy Associate General Counsel

Cc:    14050 Biscayne Blvd., Apt. 816
        North Miami, FL 33181

# FEDERAL COMMUNICATIONS COMMISSION
## WASHINGTON, D.C.

### CERTIFICATE OF FORFEITURE

**Violator(s) Name(s) and
Address(es):**

Jean Richard Salvador

5 Dora Drive, Apt. C

Rochester, NH  03867

**Total forfeiture assessed by FCC as of** December 29, 2014 **in the amount of** $15,000.00.
I certify that Federal Communications Commission records show that the violator named above
has been ordered to pay to the United States the amount stated above.

This claim arose in connection with:

Notice of Apparent Liability For Forfeiture released March 26, 2014
Forfeiture Order released June 24, 2014

**CERTIFICATION:**  Pursuant to 28 USC § 1746, I certify under penalty of perjury that the
foregoing is true and correct.

6/22/18
(Date)

Susan L. Launer
Deputy Associate General Counsel

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

## DEFENDANTS

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
      Plaintiff

☐ 3  Federal Question
      *(U.S. Government Not a Party)*

☐ 2  U.S. Government
      Defendant

☐ 4  Diversity
      *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from Another District *(specify)*

☐ 6 Multidistrict Litigation - Transfer

☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:

JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____

DOCKET NUMBER _____

DATE _____

SIGNATURE OF ATTORNEY OF RECORD _____

### FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

|  |  |  |
|---|---|---|
| _____<br>*Plaintiff(s)*<br><br>v.<br><br>_____<br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
                                                              *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*

_____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc: